# EXHIBIT "A"

7b11somc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SOMPO JAPAN INSURANCE COMPANY
OF AMERICA,

                    Plaintiff,

          v.                          07-CV-2735 (DC)

NORFOLK SOUTHERN RAILWAY
COMPANY, NORFOLK SOUTHERN
CORPORATION, THE KANSAS CITY
SOUTHERN RAILWAY COMPANY,

                    Defendants.

------------------------------x

                                      New York, N.Y.
                                      November 21, 2007
                                      10:19 a.m.

Before:

                    HON. DENNY CHIN,

                                      District Judge

                    APPEARANCES

MALOOF, BROWNE & EAGAN, LLC
     Attorneys for Plaintiff
BY:  DAVID T. MALOOF, ESQ.
     THOMAS M. EAGAN, ESQ.

KEENAN COHEN & HOWARD, P.C.
     Attorneys for Defendants
BY:  CHARLES L. HOWARD, ESQ.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

7b11somc

```
 1              (In open court)
 2              THE COURT:  Okay.  We have two motions.  One of the
 3     motions is transfer, the other is the motion for partial
 4     summary judgment.  I've read the papers.  And I know the
 5     parties had wanted to put in surreplies, so this is your
 6     opportunity to supplement the papers.  Who wants to go first?
 7              MR. MALOOF:  I'd be happy to go first.  For the
 8     plaintiff, your Honor, David Maloof, Maloof, Browne & Eagan.
 9              THE COURT:  Good morning.
10              MR. MALOOF:  Good morning.  Happy Thanksgiving eve.
11              THE COURT:  Thank you.
12              MR. MALOOF:  I thought I'd argue the venue motion
13     first.
14              MR. HOWARD:  Then shouldn't I go first because it's my
15     motion?
16              THE COURT:  The moving party should go first.
17              MR. MALOOF:  Okay.  Thank you.
18              MR. HOWARD:  Your Honor, may I move to the podium?
19     Because it's a long way down here for me.
20              THE COURT:  Whatever you'd like.  Sure.
21              MR. HOWARD:  Good morning.  May it please the Court,
22     my name is Charles Howard and I represent the defendants in
23     this action.
24              The defendants have moved to transfer venue of this
25     matter to the Northern District of Georgia pursuant to 28 USC
```

7bl1somc
```
 1      1404.  The required analysis is well settled.  It's case
 2   specific and it's fairly straightforward.  Motion to transfer
 3   under Section 1404 should be granted if the action could have
 4   been brought in the transferee court and if a transfer would
 5   serve the interests of justice and the convenience of the
 6   witnesses and parties.  This action could have been brought in
 7   Georgia.  Sompo concedes as much in its briefing.  If this case
 8   is truly a Carmack case -- and of course, NS does not concede
 9   that Carmack is the controlling law -- but if it is a Carmack
10   case, venue is certainly proper in Georgia against Norfolk
11   Southern as it was the delivering carrier where the point of
12   destination is located.  This case --
13           THE COURT:  You're not arguing that venue was improper
14   in Southern District of New York, right, you're just arguing
15   that it's more convenient down there?
16           MR. HOWARD:  Venue is proper in the Southern District
17   of New York.
18           THE COURT:  Okay.
19           MR. HOWARD:  Otherwise we'd be under a different
20   section here.
21           THE COURT:  Yes.
22           MR. HOWARD:  And if it's not under Carmack, then 28
23   USC 1391 would control, and venue would also be proper under
24   that statute, since certainly Norfolk Southern is subject to
25   personal jurisdiction in the Northern District of Georgia.
```

7b11somc

```
 1              Since the case could have been brought in Georgia, the
 2     Court would then have to move to the interests of justice and
 3     convenience of the witnesses and parties analysis.  That's a
 4     six- or seven-factor test.  And the first factor is the
 5     convenience of witnesses, both nonparty and party.  Courts have
 6     regularly held that the convenience of nonparties is a more
 7     significant factor than the convenience of parties.  There are
 8     literally witnesses all over the globe, both party and
 9     nonparty, who have information relevant to the issues in this
10     lawsuit and for whom travel to either Georgia or New York would
11     be inconvenient.  However, if this is truly a Carmack claim,
12     the factual issues which will be presented at trial are very
13     narrow, the first of which would be the condition of the
14     freight at origin.  In all likelihood that will be established
15     by testimony from Sompo's insureds or their representatives,
16     all of whom are located either in Japan or in China.  For them,
17     transoceanic, transcontinental travel is going to be required
18     regardless of whether this case is venued in New York or
19     Atlanta, Georgia.
20              The second issue that will have to be addressed at
21     trial is the condition --
22              THE COURT:  I mean, that factor doesn't cut either
23     way.
24              MR. HOWARD:  No, condition of origin goes either way.
25     Doesn't matter.
```

7b11somc

```
 1              THE COURT:  Okay.
 2              MR. HOWARD:  Condition at destination will in all
 3    likelihood be established by testimony from the individuals,
 4    all of whom are nonparties, who were specifically retained to
 5    determine the nature and extent of the damage to the freight.
 6    They are located in Georgia.  They are identified specifically
 7    in defendants' brief, and documentation of who they are, what
 8    they know, what issues they have information about and where
 9    they are located is also included in Norfolk Southern's brief.
10              In response --
11              THE COURT:  On that point, the plaintiff argues that
12    from their perspective, the damages were investigated by
13    witnesses who are now in New York.
14              MR. HOWARD:  Well, we learned from the affidavits
15    of -- is it Perfect or Perfect?
16              MR. MALOOF:  Perfect.
17              MR. HOWARD:  -- Mr. Perfect and Mr. Costanzo that they
18    hired surveyors who are down in Georgia, they communicated with
19    their insureds, they reviewed and evaluated the numerous claim
20    documents concerning the condition and value of the cargo, and
21    calculated and approved the amount payable to the insureds
22    under the various policies.  In other words, anything Mr.
23    Perfect and Mr. Costanzo would have to offer about the
24    condition of freight at destination would be pure hearsay
25    obtained from the nonparties, all of whom are located in
```

7bl1somc

1  Georgia, and those are the ones who actually conducted the
2  investigation.  I did not see anywhere in Mr. Perfect's or
3  Mr. Costanzo's affidavits where it says that they actually did
4  the investigation, that they actually did the survey.  Your
5  Honor, what they did is they read reports that had been sent to
6  them by the surveyors who were down in Georgia.
7         Sompo also argues in its brief that the testimony of
8  the surveyors -- and I'm quoting -- "would be fairly
9  meaningless."  That's interesting in light of the fact that
10 condition at destination is one of the three elements which
11 Sompo is required to prove to establish its prima facie case
12 under Carmack.
13        Of course, the question is, without this "meaningless"
14 testimony, how is Sompo going to establish that particular
15 element?  Sompo in its brief suggests it can do that with
16 photographic evidence recorded by the surveyors themselves
17 without indicating how it would establish the foundation for
18 the admissibility of those photographs without foundational
19 testimony from those who actually took the pictures.  It is
20 doubtful that Mr. Perfect would agree with Sompo's counsel that
21 the information possessed by the surveyors is fairly
22 meaningless in light of his email of August 23rd, 2006 to one
23 of the surveyors in which he commented on the importance of
24 that surveyor's work.  And that email is at Exhibit J to our
25 brief.

7b11somc

```
 1                Sompo also argues that defendants -- and I'm
 2      quoting -- "suddenly claimed that completing discovery from New
 3      York --"
 4                THE COURT:  Do you agree that Mr. Perfect, for
 5      example, evaluated the reports and decided how much to pay out,
 6      right?
 7                MR. HOWARD:  Certainly.
 8                THE COURT:  He's definitely a witness.
 9                MR. HOWARD:  He's a witness on the third element of
10      the Carmack claim, which would be the damages, yes.  He would
11      be a party witness.
12                THE COURT:  All right.  Go ahead.
13                MR. HOWARD:  Sompo also argues that defendants -- and
14      I'm quoting -- "have suddenly claimed that completing discovery
15      from New York would be unduly burdensome."  Nowhere, however,
16      in the defendants' brief do the defendants argue that discovery
17      in New York would be unduly burdensome.  In fact,
18      notwithstanding the fact that Sompo appears to quote the
19      defendants as having used the term "unduly burdensome," that
20      term does not appear anywhere in Norfolk Southern -- in
21      defendants' brief.
22                THE COURT:  Are there any other witnesses other than
23      the surveyors in Georgia?
24                MR. HOWARD:  There are the surveyors and there was a
25      witness as to the salvage value of one of the shipments.  There
```

7bl1somc

1    may have been at least one, one witness, I think it's Mr.
2    Robinson, who's a witness as to the salvage value of -- I
3    believe it was the tractors, but I'm not sure.
4            THE COURT:  Okay.
5            MR. HOWARD:  The whole discovery issue, the defendants
6    don't even mention the word discovery in their brief.  That's
7    simply a strawman argument.
8            Now Sompo in its brief, on pages 4 and 5, provide the
9    very convenient chart --
10          THE COURT:  Is it true that your clients litigated
11   these kinds of cases in the Southern District of New York for
12   years without any objection to venue and that it was only after
13   that decision -- where was it, in the Fifth Circuit -- that
14   there's been a change of heart?
15          MR. MALOOF:  The Second Circuit, your Honor.
16          THE COURT:  In the Second Circuit.
17          MR. HOWARD:  Your Honor, I certainly looked at the
18   chart of cases that the plaintiffs provided in their brief.  I
19   did not go back and research each one of those cases to find
20   out what the issues were, to find out whether venue had even
21   been discussed.  We did not represent certainly Norfolk
22   Southern in the overwhelming number of those cases.  I think it
23   was only a few that our firm might have had any involvement.
24   But I really can't answer that question.  I don't know whether
25   those cases are in fact these kinds of cases.  Certainly

7b11somc
1 Sompo's --
2           THE COURT:  Certainly we hear all the time cargo cases
3 in this Court --
4           MR. HOWARD:  Absolutely.
5           THE COURT:  -- that seemingly have no connection to
6 the Southern District of New York.
7           All right.  Go ahead.
8           MR. HOWARD:  Okay.  I'm going to be looking at the
9 chart that the plaintiffs provided on pages 4 and 5 of their
10 brief.  There they, in sort of bullet point form, they go
11 through each of the jurisdictions.  And the first one is New
12 York.  And here they make reference to, again, this is to Mr.
13 Perfect and Mr. Costanzo.  I've already addressed those two,
14 and yes, they are party witnesses, and they would have
15 testimony certainly with respect to the third element of the
16 Carmack claim, which is the amount of damages.
17           THE COURT:  Yes.  I mean, I think most of these
18 contacts don't favor Georgia or New York.  I think the question
19 really is New York versus Georgia.  And so we have Mr. Perfect,
20 Mr. Costanzo in New York, and then we have the surveyors and
21 perhaps a salvage person in Georgia.
22           MR. HOWARD:  Right.
23           THE COURT:  And that's basically those --
24           MR. HOWARD:  The Georgia witnesses are all nonparties,
25 Mr. Perfect and Mr. Costanzo are parties.  They're certainly

7b11somc

```
 1   going to go to testify regardless of where this case is venued.
 2          As for the nonparty witnesses in Georgia, as we argue
 3   in our brief, they would not be subject to the subpoena power
 4   of this particular Court, although they would be subject to the
 5   subpoena power of the court in Georgia.
 6          In fact, that's the next factor I wanted to address,
 7   which was the availability of process to compel the attendance
 8   of unwilling witnesses.  Under the Federal Rules of Civil
 9   Procedure this Court could not compel the testimony of nonparty
10   witnesses who reside in Georgia to attend trial.  The Northern
11   District of Georgia, however, could compel such testimony and
12   therefore, live testimony of those individuals who have
13   firsthand personal knowledge of the condition of the freight at
14   destination is more likely to occur if this case is venued in
15   Georgia than it is here in the Southern District of New York.
16          As for Sompo's argument that depositions would
17   suffice, the courts in this district have recognized that, for
18   example, a de bene esse deposition is "a poor substitute for
19   live testimony," and we cite to a case on that point in our
20   brief.  Sompo did not really address this issue in its briefing
21   other than to erect a strawman argument that I've already
22   addressed that depositions can take place telephonically, and
23   it also says it would pay to fly witnesses to trial.  That
24   offer by Sompo's counsel certainly doesn't address the fact
25   that this Court cannot compel any of the nonparty witnesses to
```

7b11somc
1  come up here to testify.
2          Sompo also cited to a case, Duncan v. IBM, for the
3  proposition that electronic testimony through video
4  transmission would certainly suffice.  That particular case is
5  clearly distinguishable.  In Duncan, the plaintiff sued IBM
6  here in New York.  The plaintiff wanted live testimony from IBM
7  employees who resided in New York.  The defendant IBM wanted
8  the case moved to Texas because it wanted live testimony from
9  witnesses who were familiar with the plaintiffs who reside in
10  Texas.  The court essentially held that it didn't matter which
11  forum it picked; one of the parties' witnesses were going to be
12  inconvenienced.  That's not the case here, because of the
13  Georgia witnesses, all of whom are nonparties.
14          The next factor is the locus of the operative facts.
15  And again, as I already mentioned, the elements of a Carmack
16  claim help define what facts are operative.  Where is the locus
17  of operative facts with respect to the condition at origin?
18  That's either in Japan or China.  Where is the locus of
19  operative facts with respect to the condition at destination?
20  That's clearly in Georgia, your Honor, where the freight was
21  delivered, unloaded and inspected for damage.  More
22  importantly, none of the operative facts occurred here in New
23  York City other than Mr. Perfect and Mr. Costanzo calculating
24  what the damages are.  Sompo did not address that issue
25  directly in its briefing other than indirectly through the

7b11somc

1   affidavits of Mr. Perfect and Costanzo.
2         Sompo has also made much of the fact that the
3   derailment occurred in Texas and perhaps this case should be
4   venued in Texas.  Again, Texas has nothing to do with -- going
5   back to the chart on page 5 of Sompo's brief, plaintiffs make
6   much of the fact that the history of the track maintenance as
7   well as witnesses of the condition of the cargo where the rail
8   cars flipped will all be relevant, but those facts would not be
9   relevant under a Carmack claim, your Honor, because Carmack is
10   essentially a strict liability statute where all that's
11   important where liability is established once the plaintiff
12   proves that there was good -- the freight was in good condition
13   at origin, it was in bad condition at destination and that
14   there was some damages.
15         THE COURT:  Potentially, I mean, it's not just a
16   Carmack claim, right?
17         MR. HOWARD:  If in fact it is a COGSA claim, there is
18   a negligence claim in COGSA and then the witnesses in Texas
19   might have -- or what happened in Texas might be relevant.
20   However, as the Court has already noted, Texas witnesses are
21   going to be inconvenienced one way or the other.  They're
22   either going to go to New York City or to Atlanta, Georgia.
23         THE COURT:  Why don't you finish up.
24         MR. HOWARD:  Yes, I will.
25         Plaintiffs also argued about the fact that they chose

7b11somc

1  this forum and that should have some weight.  That factor,
2  however, has little significance in light of the fact that
3  defendants seek only transfer.  In a case where we were seeking
4  dismissal say under 1406, that might have some more relevance
5  or more significance, but it doesn't.
6          Plaintiffs choice of forum should also be given
7  reduced emphasis when the facts of litigation bear little
8  material connection to the chosen forum.  Again, the only nexus
9  that this case has to New York City is that is where the
10 insurance claims made by Sompo insureds were handled.
11         THE COURT:  Is the law a consideration in why your
12 clients have made this motion?
13         MR. HOWARD:  The law is --
14         THE COURT:  Meaning substantive law.
15         MR. HOWARD:  Substantive law is the same.  It's either
16 going to be Carmack or it's going to be COGSA.
17         THE COURT:  But we have the Sompo decision in the
18 Second Circuit here, which I gather your clients don't like.
19         MR. HOWARD:  So what we have then is a split among the
20 circuits, and there's a remedy to that.  If in fact there is
21 a --
22         THE COURT:  But my question is, there is a split in
23 the circuit.
24         MR. HOWARD:  Yes, there is.
25         THE COURT:  And isn't it true that a significant part

7b11somc

1  of why your client wants it to not be in the Second Circuit is
2  the substantive law interpreting the Carmack Act?
3          MR. HOWARD:  We want to be out of the Second Circuit
4  as badly as they want to stay here, so yes, that is a
5  motivating factor behind both the plaintiffs and the
6  defendants.  But there will be --
7          THE COURT:  Right.  But hasn't the Supreme Court
8  suggested that a 1404 transfer motion shouldn't be used for
9  this purpose?
10         MR. HOWARD:  Yes.  They did that in a case that
11  involved -- where the court had diversity jurisdiction and
12  where a transfer from one venue to another would result in
13  application of another state's substantive law, which would
14  have resulted in the plaintiff being thrown out of court.
15         THE COURT:  Right.
16         MR. HOWARD:  That's the --
17         THE COURT:  Isn't this conceptually similar?
18         MR. HOWARD:  No.  They still have a remedy for their
19  freight loss and damage claim in Georgia.
20         THE COURT:  But it's a substantially reduced remedy,
21  in light of the split in the circuits.
22         MR. HOWARD:  Yes.  It would be a reduced remedy in
23  light of the split in the circuits.  And then they would have
24  the ultimate remedy to the Supreme Court to resolve the split
25  in the circuits.

7b11somc

```
 1              THE COURT:  Why isn't this similar then to the Van
 2    Dusen case?
 3              MR. HOWARD:  Because if a transfer's made, they're not
 4    out of court.  That's what happened in Van Dusen.  It was under
 5    one state's law there was a remedy, under another state's law
 6    there was no remedy.  Here they have a remedy.
 7              THE COURT:  All right.  I understand your points.
 8              MR. HOWARD:  In our brief we cite to the Mitsui Marine
 9    case and the Royal and Sun Alliance v. British Airways case,
10    which both say that the plaintiff's choice of forum should be
11    given less weight when in fact it's a subrogee, insurance
12    company subrogee that's bringing the claim.  The Royal and Sun
13    Alliance case was resolved here in this court, and that case
14    presents the exact same -- I'll call them 1404 facts presented
15    in this case for transfer.  That is that the nonparty
16    witnesses, all of whom were located in the transferee forum and
17    all of whom had direct firsthand personal knowledge of the
18    condition of freight at destination versus party witnesses who
19    were located here in New York who were employees of a subrogee
20    insurer and who did little more than handle claims and would do
21    little more at trial than authenticate documents and establish
22    the accuracy of damage figures but, more importantly, cannot
23    testify as to the condition of the freight at destination, the
24    court in the Royal and Sun Alliance matter said that such
25    testimony given by the nonparty witnesses essentially goes to
```

7b11somc

1    the heart of the case, since it is a -- goes to one of the
2    elements of plaintiff's prima facie Carmack claim.
3         I just want to respond to a couple points made by
4    plaintiffs in their response.  They argue that shipping freight
5    subject to Carmack somehow means that the freight was shipped
6    pursuant to a forum selection clause.  They don't provide the
7    Court with any authority for that proposition.  And just
8    because a rail carrier moves freight does not necessarily mean
9    that a freight loss and damage claim will necessarily be
10   governed by Carmack.  It could very well be covered by a
11   contract between the rail carrier and the rail services buyer.
12        And I've already addressed the Court's concern that
13   there will be a change in the applicable law.
14        In closing, the balancing test which is required when
15   resolving a 1404 motion to transfer venue weighs heavily in
16   favor of transferring this case to the Northern District of
17   Georgia.  The defendants submit that such transfer is warranted
18   and request that the Court transfer this matter to the Northern
19   District of Georgia.
20        THE COURT:  All right.  Thank you.
21        MR. MALOOF:  Good morning, your Honor.  David Maloof.
22        There have been a couple of developments.  One is that
23   we filed this morning a second case against Norfolk Southern
24   which arises out of the same derailment, so we've asked that it
25   be designated a related case, and I have a courtesy copy if

7bl1somc
1   you'd like the complaint.
2           THE COURT:  Okay.  Thank you.  It's the same
3   derailment?
4           MR. MALOOF:  The same derailment.
5           THE COURT:  Different parties or...
6           MR. MALOOF:  It's a different plaintiff, same
7   defendants.  Liability issues are the same.  Where it might be
8   significant is that one of the cargos was surveyed in
9   Tennessee, not in Georgia.
10          And what I've also prepared --
11          THE COURT:  Why is that?  Why would it have been --
12          MR. MALOOF:  I think that's where the receiver was and
13  so they waited until it went to the receiver to do the survey.
14          THE COURT:  Why was the cargo surveyed in Georgia
15  here?
16          MR. MALOOF:  Because that's where the receivers were,
17  so they took it on to destination.
18          I also have a chart now of the six claims that would
19  be pending for the Court.  I've given one to Mr. Howard.
20          THE COURT:  Why don't you address the fact that the
21  surveyors are in Georgia or, in this other case, in Tennessee.
22          MR. MALOOF:  Thank you, your Honor.  Actually, I think
23  one of the surveyors is in Texas, and in connection with these
24  new claims which have been filed, the survey was done in
25  Tennessee.

7b11somc

1          But with respect to the surveyors that are in Georgia,
2     I have already stipulated, and I'll do it now officially, that
3     we will agree to telephone depositions of those surveyors and
4     we will pay to fly them to New York for trial.  I actually
5     overstated that in my brief.  I think I said I would fly all
6     Georgia witnesses to trial, but that would leave me open to
7     him, you know, nominating a hundred witnesses, so I want to be
8     a little careful.  But we certainly would pay to fly all of the
9     surveyors to trial in New York and also this Mr. Robinson who
10    was involved with the salvage.  Now the issue he makes there
11    is, well, so plaintiff will pay to fly them here but maybe they
12    won't come.  In fact, the surveyors work for the railroad.  I
13    mean, they hire them to do this.  I've never had a surveyor say
14    he doesn't want to make more money to fly to New York.
15         THE COURT:  I think they are witnesses who are used to
16    this kind of thing.
17         MR. MALOOF:  Yes.  And all of those companies have
18    offices in New York.
19         THE COURT:  You don't need to say anymore.  I know
20    what I'm going to do.
21         MR. MALOOF:  Okay.
22         THE COURT:  The motion is denied.  The motion to
23    transfer is denied.  It seems to me that there is not a lot of
24    dispute on the facts.  I don't hear a substantial quarrel with
25    the chart in the plaintiff's memorandum on pages 4 and 5.  The
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

7b11somc

1  condition at origin, the witnesses are in Japan and China.  The
2  witnesses with respect to the derailment are in Texas.  That
3  may or may not be part of the case.  I mean, at the moment it
4  is part of the case.  And potentially there could be a lot of
5  witnesses there; and California, worldwide, etc., that would be
6  the same.  So really, what it boils down to is New York versus
7  Georgia.
8           In favor of transfer is the fact that the surveyors
9  are nonparties, but they're professional witnesses in the sense
10  that this is what they do, they're surveyors, and all the time
11  surveyors are involved in litigation where they have to travel.
12  I mean, I don't think it's a big deal for them.  I can't
13  imagine that they would refuse to travel to New York to testify
14  at trial.  They can certainly be subpoenaed in Georgia for a
15  deposition, a trial deposition.
16           There are witnesses in New York: Mr. Perfect, Mr.
17  Costanzo.  They don't have firsthand knowledge but they are the
18  ones who evaluated the claims, they're the ones who decided how
19  much to pay out.  So indeed, they are witnesses on damages.
20  And I think they essentially balance each other out.
21           I don't think the operative facts really are in
22  Georgia.  If you look at the new case, for example, the
23  surveyors are in Tennessee.  It's just where it happened to
24  wind up.
25           I think I agree that there is less deference given to

7b11somc

1   the plaintiff's choice, but there still has to be some
2   deference; there still is some deference.  In addition, this is
3   a district where the defendants do business, they're subject to
4   jurisdiction here, they operate in the Southern District.
5           I think the Carmack venue provision, I don't know if
6   it's a -- I'll call it a choice of forum selection clause, but
7   it makes it clear that the railroads are subject to
8   jurisdiction where they operate.
9           I think clearly a substantial part of the defendants'
10  desire to move is the law, the state of the law.  This is not
11  exactly the same as the Van Dusen case in that the plaintiffs
12  would not be without a remedy, but it potentially could be a
13  substantially curtailed remedy.  But I think really, the
14  motivation here is not the convenience of the parties or the
15  witnesses, the motivation is the law.
16          And for all these reasons, I find that the interests
17  of justice support keeping the case here in New York.  I do not
18  find that the convenience of the witnesses and parties would be
19  better served in Atlanta.  Accordingly, the transfer motion is
20  denied.
21          The next motion?
22          MR. EAGAN:  Good morning, your Honor.  Thomas Eagan
23  for the plaintiffs.
24          THE COURT:  This one is a little bit more complicated.
25          MR. EAGAN:  Yes.  What we've done on this motion too

7bllsomc
1   is prepared a chart just on the relevant facts between our case
2   and the Sompo cases and how they're identical and just
3   summarizing the four major cases that we've already briefed,
4   and just if I can hand this up to your Honor, it might be of
5   some assistance in following the argument.
6           THE COURT:  Okay.
7           MR. EAGAN:  Actually, your Honor, the issue raised in
8   our partial summary judgment motion is not all that complicated
9   in the sense that the Second Circuit in Sompo v. UP has already
10  decided the issue that intermodal shipments originating abroad
11  are subject to Carmack and the Staggers amendment when they're
12  being carried by rail in the United States.  That's number one.
13          And number two, Sompo has already decided that the
14  Carmack and Staggers amendment requires that the carrier offer
15  a full Carmack liability in order to take the advantages of
16  these exempt movements and having the reduced limit -- or
17  reduced liability and other protections that Carmack otherwise
18  gives.  At pages 59 and 60 of Sompo, that's kind of the heart
19  of the Carmack analysis of Section 10502 where --
20          THE COURT:  Hold on one second.  At pages what?
21          MR. EAGAN:  Pages 59 to 60.
22          THE COURT:  All right.  I have it.
23          MR. EAGAN:  And it's a quote we reprinted in full at
24  pages 4 and 5 of our reply brief.
25          THE COURT:  Yes.  I have the decision in front of me
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

7bl1somc
1    now.
2          MR. EAGAN:  Okay.  But the quote, it's the discussion
3    of the regulatory scheme created by the ICA and that under
4    10502 carriers were permitted to be exempt from the
5    requirements of Carmack.  But also under 10502 there's a
6    specific provision that in order to do so, there has to be an
7    offer of full Carmack liability made to the shipper in order to
8    have this limitation or liability.  And that's
9    Section 10502(e).  And of interest --
10         THE COURT:  In this case there was no such offer?
11         MR. EAGAN:  There was no such offer in the case at
12   bar.  We went through in our brief analyzing the bills of
13   lading, the waybills, the transportation contract and the
14   circular, and it comes out identically to the Sompo v. UP case
15   that was within the Second Circuit that no Carmack liability
16   was offered.
17         And of interest, Judge Batts just two months ago, on a
18   case with identical facts to our own, in a case also called
19   Sompo v. UP but a different one than the one in the Second
20   Circuit, found that --
21         THE COURT:  That's attached to your reply brief.
22         MR. EAGAN:  Yes, it is.
23         THE COURT:  Okay.
24         MR. EAGAN:  And in her case she -- the defendant UP
25   had made arguments, the 10709 arguments that are being made
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300