23

7b11somc

```
 1   here, that that section takes it out of Carmack completely and
 2   they're allowed to limit their liability and the court has no
 3   say in what happens.  Judge Batts rejected those arguments and
 4   just held that the decision in Sompo precludes any argument
 5   that Carmack does not apply to the situation where you have a
 6   cargo moving under intermodal bill of lading during its US rail
 7   lay that is damaged or lost.  And Judge Batts just rejected
 8   that argument.  And we submit the Court should do the same here
 9   because the facts we've summarized in the chart are the same as
10   the two Sompo cases in that the bill of lading does not offer
11   full Carmack liability, that the Carmack liability is not
12   offered in the other transportation documents, and that it's
13   with that, the defense of limited liability has to be thrown
14   out.
15              And as far as the other cases go, the Tamini case, the
16   Judge Schwartz case which we cited in our brief, Judge Schwartz
17   went through the 10709 argument that the defendants make now
18   and said, no, you have to look at Carmack as a whole, you have
19   to look at 10502 and what's required there.  That's what the
20   Second Circuit did in this --
21              THE COURT:  Which case is that again, the Judge
22   Schwartz case?
23              MR. EAGAN:  Tamini.
24              THE COURT:  I see.  It's in your chart.
25              MR. EAGAN:  2003 WL 135722.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

7b11somc

```
 1              THE COURT:  I see.  It's in your chart.
 2              MR. EAGAN:  Yes.  Where he analyzes the same argument
 3      that's being made now and rejects it, and we think his
 4      reasoning is sound.
 5              Another case of interest is the Schoenmann v. BNSF
 6      case that we cited in our reply brief, 420 F.Supp.2d 757 from
 7      the Southern District of Texas, which holds that 49 USC 10709
 8      does not apply to transportation that's exempt under 10502.  In
 9      that case the exempt product was potatoes, which are specially
10      exempt, but by the same analysis the continuous intermodal rail
11      transport that is exempt by the Surface Transportation Board
12      and was found by the Second Circuit to nonetheless require the
13      offer of full Carmack liability, the same analysis and same
14      holding should apply here, that 10709 just does not apply.
15              THE COURT:  Has Judge Batts' decision been appealed?
16              MR. EAGAN:  Yes.
17              THE COURT:  Okay.  That's pending, obviously.
18              MR. EAGAN:  Yes.
19              THE COURT:  Okay.
20              MR. EAGAN:  And the cases cited by the defendant in
21      support of the proposition that Section 10709 applies are all
22      distinguishable.  At page 4 they cite four cases.  Conrail, the
23      Entergy case and the Dow Chemical case, those three cases did
24      not involve the international shipment under a through bill of
25      lading; they were pure domestic shipments.  Hence, the section
```

25

7b11somc
1   10502, which the Second Circuit relied on, was not implicated.
2           The other case that's cited, Tokio Marine v. Mitsui,
3   which is from the Central District of California from 2003,
4   number one, it predates Sompo by three years; secondly, from
5   reading the case, the 10502, the exempt arguments that the
6   Second Circuit addressed were not even made in that case.  So
7   the issue really wasn't before the court.  And finally, in
8   Tokio Marine, the case concerned the liability of the ocean
9   carrier, of the through bill of lading issue, not the US rail
10  carrier.  And that's a significant distinction because that's
11  what the Sompo case, Sompo v. UP from the Second Circuit, and
12  that specifically addressed what the US rail carrier's
13  responsibilities are.
14          And so just to summarize, our facts are on all fours,
15  squarely within the Sompo case with the Second Circuit, the
16  Sompo case with Judge Batts, the Tamini case, and the same
17  holdings should apply here.
18          And regarding our analysis of the different
19  transportation documents, the bills of lading, the waybills and
20  whatnot in our brief, defendant doesn't challenge that.  They
21  go right to the heart of their argument that it's, you know, it
22  doesn't matter, it's a 10709 that applies here.  But the law is
23  otherwise.  The law is that these are exempt shipments under
24  10502 and, as such, they have to have an offer of full Carmack
25  liability, which wasn't done here.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7b11somc

```
 1          THE COURT:  Okay.  Thank you.
 2          MR. EAGAN:  Thank you, your Honor.
 3          MR. HOWARD:  Your Honor, the plaintiffs handed up a
 4     chart which purports to show that this case is on all fours
 5     with Sompo.  They left one thing off the chart that
 6     distinguishes this case substantially from the Second Circuit's
 7     decision in Sompo, and that's the fact that the rail carrier in
 8     this case moved the freight pursuant to a 10709 contract that
 9     it had with the rail services buyer.  And since it was a 10709
10     contract, the transportation, under that contract -- and I'm
11     reading from the statute -- "shall not be subject to this
12     part," and by this part it's talking about 49 USC Sections
13     10101 et seq.  Since this freight moved pursuant to a 10709
14     contract, the fact that the 10502 is out there concerning
15     exemptions, that's part of 49 USC 10101, so that's set aside.
16     Carmack is set aside again because this is a 10709 contract.
17          The Second Circuit's decision in Sompo simply did not
18     address the issue of whether Carmack applies notwithstanding
19     the existence of a valid and enforceable 10709 contract.  And
20     contrary to the representations made by plaintiff in their
21     brief, neither Judge McMahon's decision in the Sompo case on
22     remand nor Judge Batts' decision in the second Sompo v. UP case
23     addressed that issue.  107 --
24          THE COURT:  Do you know whether they were 10709
25     contracts in Judge Batts' case and in Judge McMahon's case?
```

7bl1somc

1          MR. HOWARD:  I don't know that.  I can't tell that
2     from Judge Batts' case because the whole issue of 10709 isn't
3     even raised in the decision.
4          In Judge McMahon's case, on remand, UP, Union Pacific
5     tried to make that argument and Judge McMahon said to Union
6     Pacific, first of all, it's too late to make the argument,
7     second of all, the Second Circuit had decided that the law of
8     the case was that Carmack applies, so we're not going to listen
9     to that argument.
10          So no, neither Judge McMahon's decision nor Judge
11     Batts' decision addressed the impact that a 10709 contract
12     would have on the Second Circuit's analysis.
13          The Second Circuit's case is simply not instructive on
14     the issue raised in this case.  All the Second Circuit did was
15     resolve the question of whether a Carmack or a COGSA remedy is
16     available on a freight claim arising from a domestic rail
17     portion of an international shipment originating in a foreign
18     country in traveling under a through bill of lading.
19          The next argument that Sompo makes --
20          THE COURT:  Let me ask a question, first of all.  Do
21     you agree that there was no offer of full Carmack liability in
22     this case?
23          MR. HOWARD:  There was an offer of full Carmack
24     liability that Norfolk Southern made to the rail services
25     buyer, which was Yang Ming.  That offer is part of the contract

7bl1somc
1    that Norfolk Southern has with the rail services buyer, with
2    Yang Ming.  In that contract, that contract incorporates
3    Norfolk Southern's intermodal rules circular, which does offer
4    Yang Ming the opportunity to purchase Carmack liability, which
5    of course is going to increase the rates that Norfolk Southern
6    charges Yang Ming substantially.
7              THE COURT:  Is your first argument that the Second
8    Circuit's decision doesn't control because here you did have an
9    offer of Carmack liability?
10             MR. HOWARD:  No.  The Second Circuit's decision
11   doesn't control because none of the act, no parts of 49 USC
12   apply because the freight moved pursuant to a 10709 contract.
13   It's right from 10709(c), that once the freight moves under
14   that contract, the trans --
15             THE COURT:  It sounds like even if it does apply,
16   you're saying there was an offer of full Carmack liability and
17   therefore, and it wasn't taken advantage of and therefore, the
18   limitation does apply.  You're not saying that?
19             MR. HOWARD:  Yang Ming could have opted for full
20   Carmack liability and then Norfolk Southern would have charged
21   Yang Ming significantly more money to move the freight.  And
22   then Yang Ming would have had to go back to its shippers in
23   China and in Japan and say, you know that rate we told you we
24   could move your freight for, we can't do that anymore because
25   we want full Carmack liability with our rail carrier so we're

29

```
7bl1somc
```

```
 1    going to have to charge you more.  It's not going to --
 2    freight's not going to move if rail carriers like Norfolk
 3    Southern and other rail carriers who move these intermodal
 4    containers have to go back and find all the shippers.  You have
 5    to remember, your Honor, that the shippers are strangers to the
 6    rail movement of this freight.  If you look at the waybills
 7    that are part of the record, both the Norfolk Southern waybills
 8    and the BNSF waybills, you'll see that the shippers aren't even
 9    identified in there.  All the railroads know is that an
10    intermodal company like Yang Ming or NYK Lines have tendered to
11    them containers.  They know there's freight in the containers.
12    They don't know whose freight it is --
13              THE COURT:  Yang Ming is involved with just one of the
14    cargo?
15              MR. HOWARD:  No.  Yang Ming is involved with three:
16    with the tractors; with the sushi makers, cases; and with the
17    auto parts.  NYK Lines is the intermodal carrier for the Canon
18    copiers.
19              THE COURT:  Oh, I see.  So that's the only one --
20              MR. HOWARD:  That's the only one.
21              THE COURT:  -- NYK Lines, and that's for that one.
22    Was there an offer of full Carmack liability?
23              MR. HOWARD:  I believe in the contract that Norfolk
24    Southern has with NYK, there's a reference to Norfolk
25    Southern's rules circular, and the offer is contained in the
```

```
7bl1somc
```

1   rules circular.  But that is not an offer directly to the
2   shipper because Norfolk Southern -- none of the railroads has
3   any direct connection to any of these shippers, to any of
4   Sompo's insureds.  Norfolk Southern and the railroads are doing
5   business with the intermodal carriers.
6           THE COURT:  Okay.
7           MR. MALOOF:  Your Honor, that's actually factually
8   wrong.  We can correct it when we get up.  The offer in the
9   circular says it doesn't apply to international shipments,
10  which this is one of them.  Mr. Eagan can correct that when he
11  gets up.
12          THE COURT:  All right.  I'll hear you in a few
13  minutes.
14          MR. HOWARD:  And again, your Honor, it's the 10709
15  analysis, it doesn't matter.
16          THE COURT:  I understand.
17          MR. HOWARD:  We're not required to make that offer.
18          THE COURT:  I understand that.  I understand that
19  under that analysis it doesn't matter, but on the other hand,
20  it also wouldn't matter whether that part is right if there
21  were a full offer and there was no acceptance.
22          MR. HOWARD:  The requirement to offer full Carmack
23  liability arises from 10502, which is part of the statute.  If
24  there's a 10709 contract, we don't even look at 10502.
25          THE COURT:  I understand that.  But if you're wrong on

7b11somc

1   the 10709 argument, you could still win if indeed there were,
2   that's all I'm saying, if that's true.
3           MR. HOWARD:  Okay.
4           THE COURT:  If you're right.  In other words, I don't
5   know which question is harder to deal with, but you could win
6   in two ways, one that 10709 takes it out of the situation, or,
7   alternatively, that there was an offer of full Carmack
8   liability and they didn't take advantage of it.  Is that right?
9   Am I wrong?
10          MR. HOWARD:  Norfolk Southern never -- none of the
11  railroads ever made an offer of full Carmack liability to any
12  of Sompo's insureds.  Never.
13          THE COURT:  I see.  Well, that's what I was trying to
14  find out.  In other words --
15          MR. HOWARD:  No, didn't happen.  None of the railroads
16  ever had any contact, any business dealings with any of Sompo's
17  insureds.  They are strangers to the rail portion of this
18  movement.
19          THE COURT:  But must an offer have been made to them;
20  is that what the Second Circuit holds?
21          MR. HOWARD:  That's certainly what counsel has argued,
22  that the offer has to be made to the insureds.
23          THE COURT:  Okay.  So you concede that there was no
24  offer made to the insured.
25          MR. HOWARD:  We concede that, yes.  There was no

32

7b11somc

```
 1    business relationship between Norfolk Southern and the
 2    insureds.
 3              THE COURT:  Do you disagree with that interpretation
 4    of the Second Circuit's decision, that the Second Circuit says
 5    the offer has to be made to the insured?
 6              MR. HOWARD:  Based on the facts that were before it,
 7    since Union Pacific did not argue and did not present the
 8    argument that they had a 10709 contract with the intermodal
 9    carrier, I don't really have any basis to argue that right now.
10    That's not this case.
11              THE COURT:  So it sounds like you agree that the
12    Second Circuit held that there must be an offer of full
13    liability to the insured, but you're suggesting that the Second
14    Circuit was not presented with all the arguments.
15              MR. HOWARD:  The Second Circuit had before it an
16    intermodal movement of freight which under 10502 has been
17    exempted from STP regulation.  When you have that circumstance,
18    then, yes, the rail carrier has to make an offer of full
19    Carmack liability under those circumstances because of what it
20    says in 10502.  And that's what the Second Circuit said.
21              THE COURT:  Okay.
22              MR. HOWARD:  In fact, I think in the long quote that
23    is included in Sompo's brief, they talk about how the Second
24    Circuit essentially resolved the interplay between 10502 and
25    the Carmack Amendment at 11706.  In fact, it's right in 10502.
```

7bl1somc
1   It says that if we're going to grant an exemption under this
2   statute, you still have to do -- you still have to offer full
3   Carmack liability.  If you look at 10709, there is no such
4   language.  10709 says if the freight moves under 10709, we
5   don't have -- the rest of the act becomes immaterial.  It
6   doesn't matter.
7           Now I'd like to address the Tamini decision that
8   Mr. Eagan talked about.
9           THE COURT:  Yes.
10          MR. HOWARD:  In that case the court found that there
11  was no binding contract and therefore that there was no 10709
12  contract.  So all of the conclusions that come after that, of
13  course, are pure dicta and simply because there was no 10709
14  contract.  What the Tamini court did was it ignored the plain
15  language of 10709, that transportation under a 10709 contract
16  is not subject to the act and that transportation -- and
17  therefore, the transportation -- which means that
18  transportation under a 10709 contract is not subject to either
19  10502 or 11706.  The court essentially read a requirement into
20  the statute in a 10709 which simply isn't there.  The court
21  said under 10709 you also have to look at 10502.  But the
22  express words of 10709 is you don't look anywhere else in the
23  act once you have that valid enforceable contract.
24          In addition to the Tamini case, Sompo relies on
25  several other cases:  Shippers National Freight v. ICC, which
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

7bllsomc
1    is a Second Circuit case; Co-Operative Shippers v. Atchison,
2    Topeka & Santa Fe; Quasar Co. v. ATSF.  None of those cases,
3    none of those cases dealt with the presence of a 10709
4    contract.  Sompo did not dispute the fact that Tamini is not
5    binding.  They just simply argue that --
6              THE COURT:  What makes something a 10709 contract?
7              MR. HOWARD:  If it's entered into between a rail
8    carrier who's providing transportation subject to the
9    jurisdiction of the Surface Transportation Board and one or
10   more purchasers of rail services to provide specified services
11   under specified rates and conditions.  If the contract does
12   that, it's a 10709 contract.
13             THE COURT:  And did the contract in Judge Batts' case
14   do those things?
15             MR. HOWARD:  There was no discussion of a contract in
16   Judge Batts' case.  Judge Batts, that I'm aware of, Judge Batts
17   didn't even address -- Union Pacific did not make the argument
18   that any contract that it might have had was a 10709 contract.
19   It's not there.
20             THE COURT:  Well, is the contract similar?  I mean,
21   I'm just curious that --
22             MR. HOWARD:  I don't know.
23             THE COURT:  -- that these parties don't make these
24   arguments in the Second Circuit case.  Is that a similar type
25   of contract, yet they didn't argue the 10709 argument?  I'm
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

35

7bllsomc
1   not --
2           MR. HOWARD:  Your Honor, I don't know what Union
3   Pacific argued.
4           THE COURT:  Is that bad lawyering or did they not
5   think much of the arguments?
6           MR. HOWARD:  I can't answer that, your Honor.
7           THE COURT:  All right.  Okay.  Why don't you finish
8   up, because I need to get going here.
9           MR. HOWARD:  Sure.  Now Mr. Eagan mentioned that Tokio
10  Marine and Fire Insurance Company case which we cite.  That
11  case is precisely on point.  It involves the same type of
12  contract which is present here between a rail carrier and an
13  intermodal carrier --
14          THE COURT:  How do we know that it's a 10709 contract
15  in that case?  Does it say that?
16          MR. HOWARD:  Yes.  Yes.
17          THE COURT:  All right.
18          MR. HOWARD:  The court said that was a 10709 contract,
19  and therefore, the rail transportation was not subject to
20  Carmack.
21          Now, your Honor, I have to address the Schoenmann
22  decision which plaintiffs rely on.
23          THE COURT:  Yes.
24          MR. HOWARD:  That's a 2006 decision from the court in
25  Texas.  The court there relied on language from 49 CFR
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

```
    7bl1somc
 1  1039.1(b)(2), which purportedly said that a 10713 contract --
 2  and 10713, your Honor, was the predecessor to 10709 -- must
 3  specifically state that it's subject to the section.  So when
 4  10713 controlled, there was a regulation that the ICC had
 5  promulgated that said that for a 10709 -- for a 10713 contract
 6  to be a 10713 contract, it had to say so.
 7           Now in 1986 the ICC issued new consolidated interim
 8  rules that replaced and modified a number of CFR sections,
 9  including 1039.1, which the Schoenmann case relied on.  They
10  threw out 1039.1 and they rewrote that requirement in a new
11  section, 1313.1, and that rule is reported, that change is
12  reported at 51 Federal Register 45898.  And that's from
13  December of '86.
14           In 1988 the ICC again adopted changes to interim
15  rules, but they left that requirement intact.  Again they left
16  it at 1313.1, and that change is published at 53 Federal
17  Register 5379.
18           In 1996, however, which is ten years before the
19  Schoenmann case was decided, the Surface Transportation Board
20  adopted revised regulations governing contracts under 10709,
21  which of course by that time had replaced 10713.  In those
22  revised regulations, which currently are in effect and have
23  been in effect since 1996, there's no longer a requirement that
24  a contract specify that it was made pursuant to the statute.
25  In fact, 1313 now only applies to railroad contracts for the
```

7bl1somc

1   transportation of agricultural products.  The change in -- the
2   change that was made in 1996 can be found at 61 FR 68668.
3           The Schoenmann case also relied on three other
4   decisions:  Lent Hunter (ph); PCI Transportation; and American
5   Rock Salt.  None of those cases, not a single one of those
6   cases specifically held that a 10709 contract must specifically
7   state in it that 10709 applies.
8           Now the most egregious part of the Schoenmann decision
9   is that the court held that because intermodal traffic was
10  exempted under 10502, that therefore, you can't have a 10709
11  contract under those circumstances, and what the court did is
12  it looked at the first sentence of 10709, which says one or
13  more rail carriers providing transportation subject to the
14  jurisdiction of the board.  They stop there and said, wait a
15  minute, intermodal traffic is exempted so intermodal traffic is
16  not subject to the jurisdiction of the board; therefore, we
17  can't have a 10709 contract for exempt freight.  That simply is
18  an incorrect argument.  In fact, the Interstate Commerce
19  Commission addressed that very issue in the decision it
20  rendered back in 1986.  This decision is reported at 1 ICC 2d
21  895 and in that decision the ICC says, we conclude that we do
22  retain jurisdiction over movements exempted under Section
23  10505.  Now 10505, your Honor, was the predecessor to 10502.
24  The commission also said that they found that it does not lose
25  jurisdiction over a matter that it has exempted from its

38

7bl1somc

1    regulation pursuant to 49 USC 10505.  The analysis that the ICC
2    did essentially focused on the fact that the ICC and now the
3    Surface Transportation Board can revoke at any time it wants to
4    the exemption under a 10502.  So Schoenmann is flawed in I
5    think in three different ways, and I would argue that this
6    Court should be hesitant in relying on the Schoenmann decision,
7    given the many fundamental flaws in that analysis.
8         THE COURT:  You need to finish up here.
9         MR. HOWARD:  Okay.  Your Honor, in closing, we pointed
10   out the Second Circuit's decision in Sompo is not on all fours
11   with this case.  This case presents an issue that was not
12   before the Second Circuit nor was it before either Judge
13   McMahon or Judge Batts or before any of the cases relied upon
14   by Sompo, and we would ask that the Court deny the motion for
15   partial summary judgment.
16        Thank you.
17        THE COURT:  Thank you.
18        MR. EAGAN:  Your Honor, just a few points in rebuttal?
19        THE COURT:  Yes.  Go ahead.
20        MR. EAGAN:  Thank you.  First of all, Exhibits 21 and
21   22 in support of plaintiff's motion, they were attached to my
22   reply declaration, these are the contracts which were in effect
23   in both the Sompo v. UP case in the Second Circuit and the
24   Sompo v. UP case before Judge Batts, and they are -- in sum and
25   substance they're similar to the types of contracts which are

7bl1somc

1    at issue in the case at bar.  They have a certain amount --
2    it's a rate contract, it's a volume contract.  They deal with
3    liability vis-à-vis the ocean carrier and the rail carrier.
4    These are the same types as here.
5           Now with that, with Judge Batts, specifically, the
6    10709 issue was briefed, it was raised with her, and although
7    she didn't discuss it in her opinion, she rejected it.  She
8    held Sompo v. UP from the Second Circuit requires that the
9    intermodal movements --
10          THE COURT:  In other words, the parties did argue or
11   did discuss this whole issue of whether a 10709 contract is not
12   covered.
13          MR. EAGAN:  It was covered with Judge Batts in full.
14          THE COURT:  Right.  They briefed it with Judge Batts.
15          MR. EAGAN:  Right.  Briefed, and she rejected it.  I
16   mean, she had to reject it because she found against them.
17          THE COURT:  Although she doesn't discuss it --
18          MR. EAGAN:  She doesn't discuss it, no, but she
19   rejected it.
20          THE COURT:  She had to have rejected it in light of
21   the result.
22          MR. EAGAN:  Exactly.  And she had to reject it in her
23   opinion because of the requirements of Sompo v. UP Second
24   Circuit decision holding that Carmack applies to the intermodal
25   movements of cargo under a through bill of lading.  I mean,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

40

7bl1somc
```
 1   that was her -- so it was discussed, she did find --
 2           THE COURT:  Do you know whether in the Second Circuit
 3   decision it was a 10709 contract?
 4           MR. EAGAN:  It's Exhibit 21 here.
 5           THE COURT:  It's one of these --
 6           MR. EAGAN:  Yeah, Exhibit 21.  It's the same thing.
 7   It's the same as the contract at issue here, which these
 8   contracts don't say they're 10709, but it's the same type of
 9   contract that's at issue in the case before your Honor, the
10   same type of contract.
11           THE COURT:  What makes something a 10709 contract and
12   not?
13           MR. EAGAN:  I don't -- I mean, whether this is or
14   isn't, I mean, I think there should be a recital that it is if
15   they intend it to be.  It's not here.
16           THE COURT:  But if it is, you don't think it matters.
17           MR. EAGAN:  Excuse me?
18           THE COURT:  Even if it is a 10709 contract, you don't
19   think it matters.
20           MR. EAGAN:  Exactly.  It does not matter, your Honor,
21   under the Second Circuit's opinion.
22           And the 10502 analysis, I mean, that's a specific
23   section.  It has to do with continuous intermodal carriage,
24   which is what this is, and a requirement that that carriage,
25   that there be an offer of full Carmack liability.  That's a
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

41

```
7bl1somc
```

 1    specific section of Carmack.  And as opposed to this general
 2    section, which is actually in the rates section of Carmack,
 3    this 10709, it's a specific section, 10502, and that should
 4    govern over a more general section, 10709.
 5             THE COURT:  All right.
 6             MR. EAGAN:  All right.  And then just two more points,
 7    if I may.  Just to summarize, it was both Tamini and Judge
 8    Batts, the issue was raised, the issue was rejected about the
 9    10709 contracts.
10             THE COURT:  Mr. Howard, is there a case that accepts
11    the 10709 argument?
12             MR. HOWARD:  I believe it's the Tokio Marine case.
13             THE COURT:  Tokio Marine.  Anything else?
14             MR. HOWARD:  I believe there are several cases that we
15    cite.  There's a Dow --
16             THE COURT:  What page is that?  That's in your brief?
17             MR. HOWARD:  Yes, yes.  Your Honor --
18             THE COURT:  Any cases post the Second Circuit Sompo
19    decision?
20             MR. HOWARD:  None that I'm aware of, your Honor.
21             THE COURT:  Okay.
22             MR. HOWARD:  I'm just -- I'm troubled by the fact that
23    we're now relitigating what the contracts in Judge Batts' case
24    and the very first Sompo -- I mean, they --
25             THE COURT:  You make a point that it wasn't clear

                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

42

7bl1somc

1  whether it was a 10709 contract, and I think their point is
2  that it was indeed briefed.
3          And you know that because you were involved in that
4  case?
5          MR. EAGAN:  We were, your Honor, yes.  As was New York
6  counsel, Mr. Gutterman, for Norfolk Southern, in the case
7  before your Honor.
8          THE COURT:  All right.  Okay.
9          MR. HOWARD:  The decisions themselves don't reflect
10 any analysis of what effect --
11         THE COURT:  You conceded that Judge Batts didn't
12 analyze the situation, but apparently it was briefed before
13 her.
14         MR. HOWARD:  In the Tamini case, your Honor, the court
15 found that the contract was not a 10709 contract.  They did
16 not -- anything that they said after that that you needed the
17 10502 offer of Carmack liability was just pure dictum.  We've
18 already argued that.
19         THE COURT:  If they don't specifically refer to the
20 statute, how do I know whether a contract is a 10709 contract
21 or something else?  If it's not a 10709 contract, what is it
22 then?
23         MR. HOWARD:  We would argue that it becomes a 10709
24 contract if it meets the requirements of 10709(a), which is a
25 contract to provide specified transportation services under

43

7bllsomc

1  specified rates and conditions.  That may be --
2         THE COURT:  Is that true of every one of these
3  contracts?
4         MR. MALOOF:  Three of these contracts are almost
5  identical.  They're the same exact contracts.  This is an
6  argument without a distinction.
7         THE COURT:  The contract specified transportation,
8  specified rates, right?
9         MR. MALOOF:  Yes.
10        MR. HOWARD:  Your Honor, there's only one contract
11  before this Court and --
12        MR. MALOOF:  We made them exhibits.  They're before
13  this Court.
14        MR. HOWARD:  Can I argue with either Mr. Eagan or
15  Mr. Maloof and not both of them?
16        MR. MALOOF:  I apologize.
17        THE COURT:  I'm going to reserve decision.
18        MR. EAGAN:  Your Honor, I just have one more important
19  point I forgot to mention.  May I just address it?
20        THE COURT:  Go ahead.
21        MR. EAGAN:  As far as the offer of --
22        THE COURT:  And this is complicated, by the way.
23        Go ahead.
24        MR. EAGAN:  As far as the offer -- oh, I'm sorry.
25        MR. HOWARD:  No, no, I'm going to wait.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

44

7b11somc

```
 1              MR. EAGAN:  The offer of full Carmack liability, the
 2    argument is that it was made in the contract which incorporated
 3    the --
 4              THE COURT:  No.  But I'm hearing that there was no
 5    offer of full liability made to the insured, and Sompo says it
 6    must be.
 7              MR. EAGAN:  Yes.
 8              THE COURT:  And so the question is whether Sompo is
 9    somehow different from this case or that the Second Circuit
10    failed to consider an argument, and if the answer is that it's
11    the same and --
12              MR. EAGAN:  It's the same.
13              THE COURT:  -- and it didn't consider the argument,
14    then I'm bound by the --
15              MR. EAGAN:  What was offered in their circular to Yang
16    Ming was --
17              THE COURT:  Why does it matter?
18              MR. EAGAN:  I just want to -- it was not offered for
19    international shipment.  And we briefed it in our main brief.
20    I just wanted to make that point.  It wasn't offered for this
21    type of a shipment anyway, so...
22              THE COURT:  All right.
23              MR. EAGAN:  I just wanted to make that point.
24              THE COURT:  It's in your brief.
25              Yes, sir.  One final point?
```

45

```
7bllsomc
 1              MR. HOWARD:  No, your Honor.
 2              THE COURT:  All right.  Thank you.  I'm going to
 3    reserve decision.
 4              Why don't you order the transcripts so that I have it.
 5    And then you'll hear from me.
 6              MR. HOWARD:  Thank you, your Honor.
 7              MR. EAGAN:  Thank you, your Honor.
 8              MR. MALOOF:  Thank you.
 9              THE COURT:  Thank you.
10                         o0o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```