## EXCERPTS FROM NIPPON EXPRESS BILL OF LADING

1.  DEFINITIONS

*****

(a) "Carrier" means Nippon Express U.S.A. (Illinois) Inc., the underlying Carrier, the ship, her owner, Master, operator, demise charterer and if bound thereby, the time charterer and any substitute carrier, whether, the owner, operator, charterer or Master shall be acting as carrier or bailee, as well as any of the agents, servants, and/or employees of the foregoing parties, including, but not limited to, stevedores, container yards, container freight stations, Intermodal inland carriers (rail, truck, local truckers and barge).

*****

3.  PARAMOUNT CLAUSE

3.1 Except as otherwise provided herein, for shipments by sea, originating from or destined to the United States of America, its territories or possessions and between coastal-port, this Bill of Lading shall have affect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1986 (COGSA), 46 U.S.C. Sec. 1380.1315, which is incorporated herein and made a part hereof, and nothing herein contained shall be surrendered by the Carrier of any of its rights and immunities or an increase of any of its responsibilities, liabilities, or limitations of liability under said Act.

3.2 The provisions stated in said Act except as specifically provided otherwise herein shall govern before loading on and after discharge from the vessel and throughout the entire time the Goods are in the custody of the Carrier.

3.3 If it is adjudged that any other legislation of a nature similar to the International Convention for the Unification of certain rules relating to Bill of Lading signed at Brussels on August 25, 1924 (the Hague Rules), of those rules as amended by the Protocol signed at Brussels on February 23, 1968, (the Hague Visby rules) compulsorily applies to this Bill of Lading, it shall have affect subject to the provisions of such legislation and the said Act or legislation shall be deemed to be incorporated herein.  Nothing herein shall prevent the Carrier from claiming in the courts of any country the benefit of any statutory protection or exemption from or limitation of liability afforded the carrier by the laws of that country.

*****

4.  ISSUANCE OF THE "BILL OF LADING"

*****

4.2 The Carrier shall be responsible for the acts and omissions of its agents or servants when, such agents or servants are acting within the scope of their employment as if such acts and omissions were its own and also shall be responsible for the acts and omissions of any other persons whose services it makes use of in the performance of the contract evidenced by this bill of Lading.

*****

# EXHIBIT D

7. THE CARRIER'S LIABILITY

7.1 The Carrier shall be liable for loss of or damage to the goods occurring between the time when the goods are received by the Carrier at the place of receipt or port of loading and the time of delivery by the Carrier at the port of discharge or place of delivery.

\*\*\*\*\*

7.3 if it can be proved where the loss or damage occurred, the liability of the Carrier for the loss or damage to the goods will be as follows:

(a) With respect to loss or damage occurring during the period of carriage by sea, to the extent prescribed by COGSA or the applicable national legislation of other nations, as provided for Clause 3 (Paramount Clause) hereof and in accordance with this Bill of Lading.

(b) With respect to loss or damage occurring during the period of carriage by land or inland waterways in any country for which this Carrier has assumed the responsibility of carriage, in accordance with the applicable law of that country, the inland carrier's contract of carriage and tariffs in force, and this Bill of Lading

(1) The Carrier shall be subject to, and the Carrier's liability shall not exceed, the lowest limitation of liability set forth in any of those documents or otherwise provided by that country's law, but the Carrier's liability shall never in any case exceed $500 per package;

(2) The Carrier shall be entitled to assert all rights, defenses, immunities, exemptions, limitations of an exonerations from liability of whatsoever nature accorded under the inland carrier's contract of carriage, tariff, or bill of lading, and the applicable law of that country, provided, however that nothing contained herein shall be deemed a surrendered by Carrier of any rights, defense and immunities or an increase of any of its exemptions, limitations of or exonerations from liability under this Bill of Lading, the Carrier's applicable tariff, or laws applicable or relating thereto.

\*\*\*\*\*

17. TIME TO BRING SUIT

17.1    With respect to shipments known to have been lost or damaged at sea:
    The Carrier shall be discharged of all liabilities under this Bill of Lading unless suit is brought within one year after
(a) The delivery of the goods, or
(b) The date when the goods should have been delivered.

\*\*\*\*\*

18.     LAW AND JURISDICTION

Disputes arising under this Bill of Lading shall be decided in accordance with the law of the United of America and no action shall be brought against the Carrier except in the United States District Court at New York, N.Y., U.S.A.

# COMBINED TRANSPORT BILL OF LADING
## Terms and Conditions

This Bill of Lading is a Combined Transport Document. Whenever the words "Bill of Lading" appear herein, they shall refer to Combined Transport Document.

### 1. DEFINITIONS
The following words both on the front and back hereof have the meaning hereby assigned:
(a) "Carrier" means Nippon Express U.S.A. (Illinois), Inc., the underlying Carrier, the ship, her owner, Master, operator, demise charterer and if bound thereby, the time charterer and any substitute carrier, whether, the owner, operator, charterer or Master shall be acting as carrier or bailee, as well as any of the agents, servants, and/or employees of the foregoing parties, including, but not limited to, stevedores, container yards, container freight stations, intermodal inland carriers (rail, truck, local truckers and barge).
(b) "Ship" means the ocean vessel on which the goods are shipped, and any substitute ship and any craft, lighter or other means of conveyance used, owned, chartered or operated by the carrier in the performance of the contract of carriage evidence by this Bill of Lading.
(c) "Shipper" means the person named as such in this Bill of Lading, and the person for whose account the goods are shipped.
(d) "Consignee" means the holder of the Bill of Lading, property endorsed, and the receiver of the goods and the holder of this Bill of Lading.
(e) "Merchants" includes the shipper, consignor, consignee, owner and receiver of the goods and the holder of this Bill of Lading.
(f) "Goods" means the cargo described on the face of this Bill of Lading, and if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, includes the container(s) as well.
(g) "Charges" means freight and all exposures and money obligations incurred and payable by the Merchant.

### 2. APPLICABILITY
Notwithstanding the Heading "Combined Transport Bill of Lading", the provisions set out and referred to in this document shall be also applied in the transport of the goods carried or to be carried by one mode of transport only.

### 3. PARAMOUNT CLAUSE
3.1 Except as otherwise provided herein, for shipments by sea, originating from or destined to the United States of America, its territories or possessions and between coastal port, this Bill of Lading shall have affect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936 (COGSA), 46 U.S.C. Sec. 1300-1315, which is incorporated herein and made a part hereof, and nothing herein contained shall be surrendered by the Carrier of any of its rights and immunities or an increase of any of its responsibilities, liabilities, or limitations of liability under said Act.
3.2 The provisions stated in said Act except as specifically provided otherwise herein shall govern before loading on and after discharge from the vessel and throughout the entire time the Goods are in the custody of the Carrier.
3.3 If it is adjudged that any other legislation of a nature similar to the International Convention for the Unification of certain rules relating to Bill of Lading signed at Brussels on August 25, 1924 (the Hague Rules), of those rules as amended by the Protocol signed at Brussels on February 23, 1968 (the Hague Visby rules) compulsorily applies to this Bill of Lading, it shall have affect subject to the provisions of such legislation and the said Act or legislation shall be deemed to be incorporated herein. Nothing herein shall prevent the Carrier from claiming in the courts of any country the benefit of any statutory protection or exemption from or limitation of liability afforded the carrier by the laws of that country.
3.4 If any provisions of the Bill of Lading is adjudged invalid under compulsorily applicable law, this Bill of Lading shall have effect as if that provision had never been void but only to the extent of such repugnancy and no further.

### 4. ISSUANCE OF THE BILL OF LADING
4.1 By the issuance of the Bill of Lading, the Carrier:
(a) undertakes to perform or in his own name to procure the performance of the entire transport from the place at which the goods are taken in charge to the place designated for delivery in this Bill of Lading.
(b) assumes liability as set out in these conditions.
4.2 The Carrier shall be responsible for the acts and omissions of its agents or servants when, such agents or servants are acting within the scope of their employment if such acts and omissions were its own and also shall be responsible for the acts and omissions of any other persons whose services it makes use of in the performance of the contract evidenced by this bill of Lading.
4.3 Notwithstanding Clause 3.1 and 3.2 above, with respect to the handling, carriage or storage of cargo in any country other than the U.S.A. and where it is not approved or authorized under applicable laws, rules or regulations for the Carrier to undertake such handling, carriage or storage under its own responsibility, the Carrier shall be liable only for procuring, as agent of Merchant, such handling, carriage or storage by Carriers or any persons authorized by competent governmental agencies to engage therein.

### 5. METHODS AND ROUTES OF TRANSPORTATION
5.1 The carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.
5.2 The goods may be stowed by the Carrier into or on containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
5.3 Containers, trailers, and transportable tanks whether stowed by the Carrier or receiver by it in a stowed condition from the Merchant may be carried on or under deck without notice to the Merchant.

### 6. DESCRIPTION OF GOODS AND MERCHANTS PACKING
6.1 The Merchant shall be deemed to have guaranteed to the Carrier the accuracy, at the time the goods were taken in charge by the Carrier, of the description of the goods, marks, number, quantity, weight and or volume as furnished by him, and the Merchant shall indemnify the Carrier against all loss, and expenses arising or resulting from inaccuracy or such particulars. The right of the Carrier to such indemnity shall in no way limit its responsibility and liability under this Bill of Lading to any person other than the Merchant.
Without prejudice to other provisions of this Bill of Lading, the Merchant shall be liable for any loss, damage or injury caused by faulty or insufficient packing of goods or by faulty loading or packing with in the containers and trailers and on flats when such loading or packing has been performed by he Merchant or on behalf of the Merchant by a person other than the Carrier, or by the defect or unsuitability of the containers, trailers or flats, when supplied by the Merchant, and shall indemnify the carrier against any additional expenses so caused.

### 7. THE CARRIER'S LIABILITY
7.1 The Carrier shall be liable for loss of or damage to the goods occurring between the time when the goods are received by the Carrier at the place of receipt or port of loading and the time of delivery by the Carrier at the port of discharge or place of delivery.
7.2 The Carrier shall, however, not be liable for loss or damage to goods caused by circumstances under which the applicable law provides the Carrier with an exemption or defence including but not limit to loss or damage caused by

---

(a) an act or omission of the Merchant person other than the Carrier acting on behalf of the Merchant or from whom the Carrier took the goods in charge,
(b) insufficiency or defective condition of the packing or marks and or numbers;
(c) handling, loading, stowage or unloading of the goods by the Merchant
(d) inherent vice of the goods
(e) strike, lockout, stoppage or restraint of labor, the consequence of which the carrier could not avoid by the exercise of reasonable diligence;
(f) any cause or event which the Carrier could not avoid and the consequences whereof it could not prevent by the exercise of reasonable diligence;
(g) a nuclear incident if the operator of a nuclear installation or a person acting for him is liable for this damage under an applicable international convention or national law governing liability in respect of nuclear energy.
7.3 If it can be proved where the loss or damage occurred, the liability of the Carrier for the loss or damage to the goods will be as follows:
(a) With respect to loss or damage occurring during the period of carriage by sea, to the extent prescribed by COGSA or the applicable national legislation of other nations, as provided for Clause 3 (Paramount Clause) hereof and in accordance with this Bill of Lading.
(b) With respect to loss or damage occurring during the period of carriage by land or inland waterways in any country for which this carrier has assumed the responsibility of carriage, in accordance with the applicable law of that country, the inland carrier's contract of carriage and tariffs in force, and this Bill of Lading.
(1) The Carrier shall be subject to, and the Carrier's liability shall not exceed, the lowest limitation of liability set forth in any of those documents or otherwise provided by that country's law, but the Carrier's liability shall never in any case exceed $500 per package;
(2) The Carrier shall be entitled to assert all rights, defenses, immunities, exemptions, limitations of and exonerations from liability of whatsoever nature accorded under the inland carrier's contract of carriage, tariff, or bill of lading, and the applicable law of that country, provided, however that nothing contained herein shall be deemed a surrender by Carrier of any rights, defense and immunities or an increase of any of its exemptions, limitations of or exonerations from liability under this Bill of Lading, the Carrier's applicable tariff, or laws applicable or relating thereto.
7.4 If it cannot be established where the loss occurred, the liability of the Carrier for the loss or damage to the goods will be as provided for in this Bill of Lading (particularly Clause 7.2, 7.2, 8.1, 8.2, 9, 10, 16, 17.4 of this Bill of Lading.

### 8. LIMITATION AMOUNT
8.1 The value of the goods shall be determined according to the current commodity exchange price or if no such price, according to the current market price or if there is no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.
8.2
(a) Compensation shall not, however, exceed U.S. $500.00 per container, package, or unit unless with the consent of the Carrier the Merchant has declared a higher value for the goods, such higher value has been stated in the space provided on this Bill of Lading, ad valorem, freight shall be paid, in which case such higher value shall be the limit. However, the Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim and the Carrier will not be liable for a claim for lost profits or consequential damages.
(b) Where a container, pallet or similar article of transport is used to consolidate Goods, the quantity of the largest of such articles of transport shall be deemed the number of packages or units for the purpose of any limit of liability per package or, shipping unit provided in any international convention or national law relating to the carriage of goods by sea. For example, where both container and pallets are used to consolidate the Goods, the number of containers shall be deemed the number of packages or units, unless such designation is prohibited by law, in which case the pallets shall be deemed the packages or units.

### 9. DELAY
The Carrier shall not be liable for delay or other similar consequential damages unless directly caused by the gross negligence of the Carrier. Should the Carrier be held not liable, such liability shall be limited to the freight for the stage of transport, subject to the provisions of applicable international conventions or national laws.

### 10. DEFENSES AND LIMITS OF LIABILITY
10.1 The defences and limits of liability provided for in these conditions shall apply in any action against the Carrier for loss or damage to the goods whether, the action be founded in contract or in tort.
10.2 If an action for loss or damage to the goods is brought against a person referred to in Clause 4.2, such person shall be entitled to avail himself of the defences and limits of liability which the Carrier is entitled to invoke under these conditions.
10.3 The aggregate of the amounts recoverable from the Carrier and its servants, agents and or sub-contractors shall in no case exceed the limits its provided for in this Bill of Lading.

### 11. DELIVERY
11.1 The Carrier shall have the right to deliver the Goods at any time from or at the vessel's site, custom house, warehouse, wharf, quay or any other place designated by the Carrier within geographic limits of the port of discharge or place of delivery shown on the face hereof.
11.2 In any case, the Carrier's responsibilities shall cease when the Goods have been delivered to the Merchant or inland carriers or any other person entitled to receive the Goods on his behalf at the place designated by the Carrier. Delivery of the Goods to the custody of customs or any other authorities shall constitute final discharge of the Carrier's responsibility hereunder.
11.3 If delivery of the goods or any part thereof is not taken by the Merchants at the time and place when and where the Carrier shall be entitled to call upon the Merchant to take delivery thereof, the Carrier shall be entitled to store the goods or the part thereof, at the sole risk of the Merchant whereupon the responsibility of the Carrier in respect of the goods or that part thereof stored as aforesaid (as the case may be) shall wholly cease and the cost and expense of such storage forthwith upon demand by the Carrier be paid by Merchant.
11.4 In case the cargo received by the Carrier is container(s) for which contents have been packed by or on behalf of Merchant, the Carrier shall only be responsible for delivery of the total number of container(s) shown on the face hereof, and shall not be required to unpack the container(s) and deliver the contents thereof in accordance with brands, marks, numbers, sizes or types of packages or pieces.

### 12. FREIGHT AND CHARGES
12.1 Freight shall be paid in cash without discount and where prepayable or payable at destination, shall be considered as earned on receipt of the goods by the Carrier and not to be returned or relinquished in any event.
12.2 Freight and all other amounts mentioned in this Bill of Lading are to be paid in the currency named in the Bill of Lading, or at the Carrier's option in the currency of the country of dispatch or destination subject to the rules

---

in the applicable Carrier's tariff.
12.3 All dues, taxes and charges or other expenses in connection with the goods are the Merchant's responsibility and shall be paid by the Merchant or his agent.
12.4 The Merchant shall reimburse the Carrier in proportion to the amount of freight for any costs for deviation or delay or any other increase costs of whatever nature caused by war, warlike operation, epidemics, strikes, government directions or force majeure.

### 13. DANGEROUS OR HAZARDOUS GOODS AND IMMUNITY
13.1 The Merchant shall comply with rules which are mandatory according to the national law or international convention relating to the carriage of goods of a dangerous or hazardous nature.
13.2 If the Merchant fails to comply with such regulations and the Carrier is unaware of the dangerous nature of the goods the necessary precautions to be taken and if, at any time they are deemed to be a hazard to life or property, they may at any place be unloaded, destroyed or rendered harmless circumstances may require, without comprehension, and Merchant shall be liable for all los, damage, delay or expenses arising out of their being taken in charge, or their carriage, or of any service incidental thereto. The burden of proving the Carrier knew the exact nature of the danger constituted by the carriage of the said goods shall rest upon the person entitled to the goods.
13.3 If any goods shipped with the knowledge of the Carrier as to their dangerous nature shall become a danger to the vehicle or cargo, they may in like manner be unloaded or landed at any place or destroyed or rendered innocuous by the Carrier without liability on the part of the Carrier except to General Average, if any.

### 14. LIEN
The Carrier shall have a lien on all goods for all charges amounts due under this Bill of Lading plus storage fees, it may enforce such lien in any manner provided by law, and the cost of such action shall be a part of such lien.

### 15. GENERAL AVERAGE AND COLLISION
The Merchant shall indemnify the Carrier in respect of any claims of a General Average nature which may be made on him and shall provide such security as may be required by the Carrier in this connection. The Merchant shall also indemnify the Carrier in respect of any liability of the Carrier to a non-carrying vessel involved in a collision with the carrying vessel under circumstances where the applicable international conventions or national laws.

### 16. NOTICE OF LOSS
Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier or to its representative at the place of delivery before or at the time of delivery of the goods, or if the loss or damage is not apparent, within three consecutive days, the goods shall be deemed to have been delivered as described in this Bill of Lading.

### 17. TIME TO BRING SUIT
17.1 With respect to shipments known to have been lost or damaged at sea:
The Carrier shall be discharged of all liabilities under this Bill of Lading unless suit is brought within one year after
(a) the delivery of the goods, or
(b) the date when the goods should have been delivered.
17.2 With respect to shipments known to have been lost or damaged within the USA:
(a) A written claim must be received by Carrier within nine (9) months of the date the Goods were delivered or should have been delivered pursuant to the provisions of the Carmack Amendment, 49 U.S.C. Sec. 11-107(a). If no such written notice of claim is received by Carrier within this nine month period, then Carrier shall be discharged of all liabilities under this Bill of Lading.
(b) If and only if Carrier receives the written notice of claim within the nine month period required in Clause 17.2(a) of this Bill of Lading, suit on such claim must be brought no later than two years from the date of declination of such claim in whole or in part by the Carrier, its agent, servants, and/or employees.
17.3 With respect to shipments known to have been lost or damaged within any country other than the U.S.A.
The Carrier shall be discharged of all liabilities under this Bill of Lading.
(a) Unless a claim in writing is filed within seven (7) months of the date of delivery, or when the goods should have been delivered, and
(b) Unless suit is brought within nine (9) months after the delivery of goods, or the date when the goods should have been delivered.
17.4 With respect to shipments when it cannot be established where the loss or damage has occurred:
(a) Unless a claim in writing is filed within seven (7) months from the date of delivery, or when the goods should have been delivered; and
(b) Unless suit is brought within nine (9) months after delivery of the goods, or the date when the goods should have been delivered.

### 18. LAW AND JURISDICTION
Disputes arising under this Bill of Lading shall be decided in accordance with the law of the United States of America and no action shall be brought against the Carrier except in the United States District Court at New York, N.Y., U.S.A.

### 19. MATTERS AFFECTING PERFORMANCE
If, at any time the Performance of the contract evidenced by this Bill of Lading is or is likely to be affected by any hinderance, risk delay, difficulty or disadvantage of whatever kind (and however arising) which cannot be avoided, by the exercise of reasonable endeavors, the Carrier (whether or not the transport is commenced) may, without notice to the Merchant, treat the performance of this contract as terminated and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be nitfied to the Cargos on the Goods received for transportation and the Merchant shall pay additional costs of carriage and delivery and storage at such place or port.



EXHIBIT 11